

FILED

MAY 2 1 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISON

| | | |
|---|---|---|
| Juan Alonzo-Miranda | § | CIVIL ACTION NO. : 5:13-CV-01057 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Schlumberger Technology Corporation | § | |
| Defendant. | § | A JURY IS DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), Juan Alonzo-Miranda files his first amended complaint in order to add a sentence to the opening paragraph, amend the last sentence of Paragraph 12, amend the last sentence of Paragraph 13, and to add Paragraphs 13A and 15A. This complaint is otherwise identical to the plaintiff's original complaint.

* * * * *

This country enacted disability laws to eliminate the prejudice and stereotypes that kept good applicants out of jobs simply because of disabilities. The defendant ignored that mandate and denied Plaintiff, a decorated war veteran, reasonable accommodations for his disability, Post-Traumatic Stress Disorder.  The defendant then retaliated against Plaintiff and wrongfully terminated his employment.

### JURISDICTION AND VENUE

1.      This case is brought pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq.  This Court has jurisdiction of this case according to 28 U.S.C. § 1331.

2.      Venue is invoked pursuant to 28 U.S.C. § 1391.

### PARTIES

3.      The plaintiff, Juan Alonzo-Miranda, is an adult resident of the United States of America.

EXHIBIT 1

4.     The defendant, Schlumberger Technology Corporation ("Schlumberger"), is an organization organized and existing under the laws of the State of Texas, and maintains its principal place of business at 1200 Enclave Parkway, MD-322, Houston, Texas 77077. Defendant may be served with process upon its registered agent, National Registered Agents, Inc., 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

## STATEMENT OF FACTS

5.     The plaintiff, Juan Alonzo-Miranda, began working as a Mechanic Technician Trainee for Defendant Schlumberger on December 1, 2010.  Plaintiff's education, as well as his previous experience in the Marine Corps and the U.S. Army, made him well-qualified for this position.

6.     Plaintiff participated in two tours of duty in Iraq as a Marine and one tour in Iraq with the Texas Army National Guard conducting convoy security escort missions.  During these tour, Plaintiff saw and was involved in a great deal of active combat.  After these tours, Plaintiff, like others with whom he served, was diagnosed with Post-Traumatic Stress Disorder (PTSD). Plaintiff has generally able to manage his PTSD successfully; however, he has struggled at times, such as when he heard news of his friends and fellow Marines' and Soldiers' struggles with alcoholism, depression, and suicide.  This has been challenging to him, but he has overcome these challenges.

7.     Though Plaintiff understandably prefers not to advertise his disability, he informed his supervisor at Schlumberger soon after he was hired, even though this is not required by law. Initially, Plaintiff did not believe that any accommodations were necessary for him to perform his job, though he regularly sought counseling and other assistance for his disability during his time away from work.

8.    At a veteran's event, Plaintiff learned about a management tool for PTSD that interested him greatly.  He found out that talented service dogs had been trained to assist veterans with PTSD, with great success.  These service dogs are trained to carefully observe their masters and to intervene and assist.  So successful are these dogs that they often prevent a panic attack before the person realizes the need themselves, and their mere presence lends a steadying and calming influence.  Service dogs now are assisting those with PTSD as well as diabetes, for these dogs can prevent both PTSD symptoms as well as hypoglycemic episodes.  Hoping a service dog might aid him in dealing with his PTSD, Plaintiff contacted the group Train a Dog-Save a Warrior.  Plaintiff learned that his own dog, Goldie, had the temperament and characteristics necessary to be successfully trained as a service dog.  Plaintiff and Goldie trained diligently under the guidance of Train a Dog-Save a Warrior and on March 14, 2012 Goldie was certified and licensed as a PTSD service dog.

9.    Throughout this time period, Plaintiff had worked successfully for Defendant without any accommodations sought or offered.  However, on May 4, 2012, Plaintiff suffered a severe panic attack caused by his PTSD, which rendered him unable to work for a few days.  Immediately upon his return, on May 8, 2012, Plaintiff asked Defendant for an accommodation to allow him to bring Goldie to work with him as a way to accommodate his disability and prevent any episodes that might interfere with his ability to work.  Defendant demurred, claiming that it would not consider such an accommodation without proof of the need for it.  Defendant demanded medical records, so Plaintiff signed a form authorizing release of his medical records.  Plaintiff's job performance, despite his days off, remained so good that his manager recommended that he be promoted and given a raise, which Plaintiff received on July 1, 2012.

10.     Unfortunately, rather than engaging with Plaintiff in an interactive process in good faith, Defendant kept dodging his request for reasonable accommodation.  For example, Defendant repeatedly required that Plaintiff, his counselor, and his physician complete lengthy and invasive questionnaires, indicating a distrust of Plaintiff's request for accommodation.  When Plaintiff diligently provided all the requested material and information, Defendant turned around and asked for more, again and again.  These requests by Defendant were punitive, since Defendant had already obtained a medical authorization to obtain all these records.  Defendant's requests were designed only to delay and obstruct the interactive process required by the ADA for reasonable accommodation requests, and constituted a constructive denial of Plaintiff's requested accommodations.  By September 6, 2012, Plaintiff had come to the realization that Defendant was not acting in good faith with regard to his request for accommodations and he filed a complaint with the Equal Employment Opportunity Commission.

11.     Defendant's conduct in repeatedly delaying Plaintiff's request for accommodation made the work environment incredibly stressful for Plaintiff, exacerbating his PTSD and leading to another, much more severe panic attack on October 13, 2012.  Plaintiff worked diligently to overcome these episodes that were caused by Defendant's failure to honor its duty of accommodation..  Plaintiff did the best he could, obtaining counseling and by taking additional classes on stress and PTSD from the Veteran's Administration.

12.     Unsurprisingly, the EEOC confirmed the violation of the duty to accommodate, and issued a cause determination that Schlumberger had violated and continued to violate the ADA by denying Plaintiff's request for accommodations and by repeatedly requesting "unnecessary and superfluous information."  Only after the cause determination did Schlumberger finally acquiesce to the reasonable accommodation, and Plaintiff returned to work on December 3,

2012. This accommodation was reasonable and successful, and Plaintiff had no panic attacks after that time.

13.     Unfortunately and paradoxically, even as the accommodation did exactly what it was designed to do by allowing Plaintiff to successfully perform of the essential functions of the job, Defendant began to place punitive restrictions on this accommodation. For example, Defendant restricted Plaintiff from bringing his service dog through the front door, through which all other workers enter. Instead, Defendant ordered Plaintiff to use a side door. This restriction was not in place until after the accommodation had proven successful. Defendant also denied Plaintiff the accommodation while in the office building, the locker room, and the break room. Not only were these restrictions humiliating and senseless, but they undercut the accommodation requested by Plaintiff by making it difficult for Plaintiff to keep his service dog by his side while he worked and thereby caused more difficulty in performing the essential functions of the job.

13A.   Though Plaintiff was committed to his job and continued to receive good performance reviews, it became obvious that he was no longer welcome at Schlumberger. Plaintiff was accused by his supervisor of violating safety rules, though the supervisor had never witnessed any such thing and claimed the accusation was based on an anonymous tip. Plaintiff's property was vandalized on the Schlumberger work site. And most seriously, Plaintiff was accused of being a threat to his workplace because of his PTSD and was forced to undergo the stress and embarrassment of having this baseless allegation investigated by Schlumberger safety personnel. On April 22, 2014, Plaintiff's counsel informed counsel for defendant of these apparently retaliatory acts. Plaintiff reiterated his commitment to his work and asked management for Defendant to show leadership by putting a stop to these and similar matters. Rather than address

these instances of retaliation, Defendant instead responded by terminating Plaintiff's employment, which it did on the evening of April 25, 2014.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered by Schlumberger.  The EEOC issued a cause determination that Schlumberger had and continued to violate the ADA on November 2, 2012.  The EEOC issued a right to sue letter on August 22, 2013, authorizing this civil action.   All administrative prerequisites and conditions precedent have occurred or been performed.

## DISABILITY DISCRIMINATION

15.     The plaintiff is a qualified individual who has a disability, PTSD, and was regarded as having a disability.  Under the ADA, as amended, Plaintiff's disability must be assessed without regard to mitigating measures such as medication or his service dog.  Plaintiff's disability interferes with major life activities by causing him severe anxiety and incapacitating depression. The plaintiff was and is eminently qualified to serve as a Mechanical Technician, but he has been and continues to be denied reasonable accommodations for his disability.  He had an actual disability and was also regarded as having a disability, based on the defendants' perception that he is limited by his need for a service animal.  Defendants' conduct of denying Plaintiff reasonable accommodations for his disability violated the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.   See 42 U.S.C. 12112(b).  Defendant's conduct of repeatedly requiring more and more unnecessary documentation from Plaintiff, his counselor, and physician, also caused a breakdown of the ADA's interactive process for reasonable accommodations.

15A.    Defendant's acts set forth above constitute unlawful retaliation against Plaintiff for filing and pursuing his claim of disability discrimination, in violation of 42 U.S.C. § 12203. Defendant's discharge of Plaintiff was likewise unlawful discrimination and retaliation under 42 U.S.C. §§ 12112(a) and 12203.

## DAMAGES

16.    The damages suffered by the plaintiff include lost wages and benefits, as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.  In addition, Plaintiff seeks punitive damages based on Defendants' malice and reckless indifference to his federally protected rights.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1.    Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act;

2.    Enjoining and permanently restraining these violations of law;

3.    Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4.    Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

5.    Awarding plaintiff punitive damages;

6.    Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.    Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.    Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,


/s/ John W. Griffin, Jr.
John W. Griffin, Jr.
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas  77901
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier

Counsel for the Plaintiff