UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISON

| | | |
|---|---|---|
| Juan Alonzo-Miranda | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. : 5:13-CV-01057-OLG |
| | § | |
| Schlumberger Technology Corporation | § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Plaintiff, Juan Alonzo-Miranda and files this Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56:

### I. Introduction

Federal law requires Schlumberger to provide equal employment opportunities to individuals with disabilities. This case was brought because Schlumberger refused to provide a reasonable accommodation to its employee, Juan Alonzo-Miranda, a disabled veteran with PTSD who asked to bring his service dog to work. Instead, Schlumberger denied the requested accommodation for more than six months, refused to accept documentation provided by Plaintiff's treating physician and counselor, and failed to suggest an alternative accommodation or otherwise participate in an interactive process with Plaintiff. Inexplicably, on November 30, 2012, Schlumberger reversed course and granted the reasonable accommodation request.[1] Schlumberger's failure to timely accommodate forced Plaintiff to take several weeks of leave from his work, resulting in serious financial damage and mental anguish.

---

[1] By this time, the EEOC had issued a cause determination, though Schlumberger denies that the cause determination had anything to do with its eventual granting of the requested accommodation.

Summary judgment is appropriate on this record on discrete issues, as follows. Schlumberger admits that: (1) Plaintiff was and is a qualified individual (Exh. 1, 125:13-16[2]); (2) Plaintiff has a disability, PTSD (Exh. 1, 102:3-7, 125:10-12); (3) Schlumberger knew of Plaintiff's disability (Exh. 1, 80:15-18; Exh. 2, Exh. 3); (4) On May 8, 2012, Plaintiff requested a reasonable accommodation, the use of his PTSD service dog at work (Exh. 1, 65:2-14, 102:8-103:21; Exh. 2); (5) Schlumberger refused to grant an accommodation until November 30, 2012 (Exh. 4, No. 7); and (6) the requested accommodation would not have posed an undue hardship to Schlumberger (Exh. 1, 124:21-25).  Because of Schlumberger's admissions, these issues are resolved as a matter of law.  Schlumberger failed to accommodate Plaintiff's disability as required by the Americans with Disabilities Act (ADA), and summary judgment on Schlumberger's liability is appropriate.

## II.  List of Exhibits

1. Deposition of Jean-Remy Bellanger, Schlumberger corporate representative
2. Schlumberger letter to Plaintiff dated May 8, 2012
3. Clarifying Accommodations Form from Dr. Barbara Roach
4. Defendant's objections and responses to Plaintiff's requests for admissions
5. Schlumberger Employee Mini File for Plaintiff
6. Job description and list of essential functions for Plaintiff's position
7. Defendant's objections and responses to Plaintiff's interrogatories
8. UNDER SEAL:  VA disability rating decision for Plaintiff's PTSD
9. UNDER SEAL:  Medical notes from Dr. Amanda M. Wright
10. Medical release requested by Schlumberger
11. Schlumberger letter to Plaintiff dated November 30, 2012

---

[2] For brevity, Plaintiff will use the following format to cite to deposition testimony:  "Exh. no., page:line."

12. UNDER SEAL:  Medical notes from Dr. Barbara Roach

13. Email correspondence with R. Keith Franklin

14. Clarifying Accommodations Form from Ronald P. Yates

15. Schlumberger letter to Plaintiff dated October 17, 2012

16. Notice and list of topics for Schlumberger's Rule 30(b)(6) deposition

17. EEOC cause determination

18. Plaintiff email to Paal Kibsgaard, Schlumberger CEO

19. Letter from Gaynor Richardson to Plaintiff dated November 8, 2012

20. EEOC letter to Bill Davis, attorney for Schlumberger

21. Plaintiff's performance review for 2013

### III.  Undisputed Material Facts

Schlumberger, an oilfield services company, hired Plaintiff as a mechanic on December 1, 2010.  Exh. 5.  The essential functions of Plaintiff's job as a mechanic include maintaining, repairing, and modifying equipment, following safety policies and procedures, and maintaining a clean and orderly work site.  Exh. 6.  Defendant admits that Plaintiff was at all times able to perform the essential functions of his job as a mechanic.  Exh. 1, 125:13-16; Exh. 7, No. 2.

Plaintiff is a veteran, having served in the Marines for eight years and then in the Army for another year.  Exh. 8.  As a result of his service in Iraq, Plaintiff has Post-Traumatic Stress Disorder (PTSD).  *Id.*  The Department of Veterans Affairs (VA) considered Plaintiff's PTSD a service-connected disability throughout the time period at issue in this suit.  *Id.*  Defendant agrees that Plaintiff's PTSD is a disability.  Exh. 1, 102:3-7.

On the evening of May 4, Plaintiff experienced a panic/anxiety attack which forced him to leave work at Schlumberger and seek treatment for his PTSD.  Exh. 9.  Shortly after, on May

8, 2012, Plaintiff asked Schlumberger to accommodate his PTSD by allowing him to bring his PTSD service dog to work with him. Exh. 1, 65:2-14, 102:8-103:21; Exh. 2. Schlumberger responded to Plaintiff's request the same day. Exh. 2. Schlumberger stated that Plaintiff needed to do two things: sign a medical release form so that Schlumberger could communicate with Plaintiff's physicians, and have his medical provider fill out a "Clarifying Accommodations Form." *Id*. Plaintiff promptly complied with both requests. Exh. 3; Exh. 10.

Though Schlumberger now concedes that the requested accommodation was reasonable (Exh. 1, 102:8-103:21), for six months Schlumberger denied the accommodation request. Exh. 4, no. 7; Exh. 11. When it initially denied the request, Schlumberger falsely claimed that Barbara Roach, M.D., who filled out the Clarifying Accommodations Form, was not a physician treating Plaintiff's PTSD. Exh. 1, 94:21-15. Presumably, Schlumberger's reason for now admitting that the request should have been granted is because Schlumberger now realizes that Dr. Roach, Plaintiff's primary care physician, *was* in fact Plaintiff's treating physician for his PTSD.[3] Exh. 1, 91:8-11; Exh. 9; Exh. 12. When Plaintiff asked his therapist to fill out the form, in order to satisfy Schlumberger's demand for another form, his therapist informed him that he was not a physician. Exh. 13. Another therapist, Ronald Yates, did fill out the form, though he took pains to point out that he was a licensed counselor, not a physician. Exh. 14. Schlumberger rejected this form as well, complaining that Yates's responses, though lengthy and detailed, were too "generic." Exh. 15. Tellingly, though Schlumberger found fault with both Clarifying Accommodation Forms, from Dr. Roach and Mr. Yates, Schlumberger never used the medical release (Exh. 10) to seek any information for itself. Exh. 1, 89:1-90:13.[4]

---

[3] When asked whether Schlumberger continues to assert that Dr. Roach was not a treating physician for Plaintiff's PTSD, Schlumberger's representative answered "No." Exh. 1, 91:8-11

[4] Since Mr. Bellanger was designated to speak for the company on this topic (Exh. 16, topic 17), his answers bind the company. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); see Exh. 1, 32:16-21.

Plaintiff, unable to meet Schlumberger's ever-shifting requirements, was forced to seek assistance from the EEOC. The EEOC investigated, and on November 2, 2012 issued a cause determination that Schlumberger had violated the ADA. Exh. 17. The EEOC found that Schlumberger had sufficient information to grant Plaintiff's accommodation in June of 2012, that Schlumberger failed to grant Plaintiff's requested accommodation, and that Schlumberger had not suggested any alternative accommodation or otherwise engaged in the required interactive process. *Id.* Notably, Schlumberger now admits that it has no dispute with the Cause Determination:

> **Deposition of Jean-Remy Bellanger**
> 23   Q. Sure. Has anybody said at Schlumberger said
> 24   that they disagreed with anything in that cause finding?
> 25   A. No.

Exh. 1, 39:23-25.

At the time, however, Schlumberger refused to grant the accommodation even in the face of the EEOC's cause determination, leading Plaintiff to appeal directly to Schlumberger's CEO, Paal Kibsgaard. Exhibits 18 and 19. On November 30, 2012, over six months after Plaintiff made his request, Schlumberger finally granted the accommodation and agreed that Plaintiff could bring his service dog to work beginning December 3, 2012. Exh. 11. When asked, however, if the EEOC cause determination or its own CEO had any role in Schlumberger's granting the accommodation, Schlumberger's representative said "No, I don't think so." Exh. 1, 98:1-14, 99:10-15.

The EEOC attempted to conciliate a final resolution between the parties in December 2012 and January 2013. In a letter to Schlumberger's attorney, the EEOC further explained its cause determination:  Schlumberger violated the ADA because it "refused to provide Mr. Alonzo-Miranda a reasonable accommodation that he requested" and never "identified any other

effective, alternate accommodation for Mr. Alonzo-Miranda in response to his accommodation request." Exh. 20. Despite the failure of the conciliation process, the accommodation remained largely in place[5] and Plaintiff, with the assistance of his service dog, successfully performed his job at Schlumberger. Exh. 21. Schlumberger does not contend that there were any problems with the dog, or that accommodating the dog was an undue hardship. Exh. 1, 105:6-23, 146:4-8. Defendant further agrees that the accommodation was reasonable and successful. Exh. 1, 144:13-145:7, 146:9-15.

### IV. Argument and Authority

*A.     Legal Standard*

Pursuant to the Federal Rules of Civil Procedure, Rule 56(c), a summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id*. at 2509. Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Id*. at 2510. The movant need not disprove the non-moving party's claims in order to secure a summary judgment.

*B.     Plaintiff is a Qualified Individual*

The ADA defines "Qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that

---

[5] Schlumberger instituted new restrictions on Plaintiff's accommodation, such as barring Plaintiff from bringing his service dog through the facility's main entrance or into the employee break room. Though Plaintiff contends that these restrictions also violated the ADA, they are not a subject of this motion.

such individual holds or desires." 42 U.S.C. § 12111(8).  Schlumberger agrees that at all relevant times, Plaintiff was able to perform the essential functions of the job:

> **Deposition of Jean-Remy Bellanger**
> 13    Q.  And Schlumberger agrees that Juan was qualified
> 14  to perform the essential functions of his mechanic's
> 15  job?
> 16    A.  Yes.

Exh. 1, 125:13-16; see also Exh. 1, 71:16-19; Exh. 7, No. 2.

Schlumberger thus admits that Plaintiff is a Qualified Individual under the ADA, making summary judgment appropriate on this issue.

C.     *Plaintiff's PTSD is a Disability*

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities" or "a record of such an impairment." 42 U.S.C. § 12102(1)(A) and (B).  Schlumberger admits that Plaintiff's PTSD is a disability:

> **Deposition of Jean-Remy Bellanger**
> 3    Q.  Does Schlumberger agree that post-traumatic
> 4  stress disorder is a disability?
> 5         MR. DAVIS:  Objection.  Form and outside
> 6  the scope of the notice.
> 7         THE WITNESS:  Yes.  PTSD is a disability.

Exh. 1, 102:3-7.

Further, Plaintiff's history of PTSD is well documented: Plaintiff was originally diagnosed with PTSD in 2007 and VA doctors and a VA disability evaluation board have confirmed this diagnosis multiple times since then.  Exhibits 3, 8, 12, and 14.  There is no dispute that Plaintiff has PTSD.  Exh. 1, 125:10-12.  Nor is there any dispute that Plaintiff's PTSD is a serious mental health issue that seriously affects his quality of life, including major life activities such as thinking and concentrating.  Exh. 8.  Plaintiff's most visible symptoms include hypervigilance

and panic attacks, which attacks can be so serious that he is unable to function.[6]  Exhibits 3, 12, and 14.  Schlumberger does not dispute any of this—indeed, Schlumberger was aware that Plaintiff's struggles were at times so severe that he contemplated suicide.  Exh. 1, 126:14-19.  Thus, the record entirely corroborates Schlumberger's admission that Plaintiff is an individual with a disability under the ADA.  Exh. 1, 102:3-7.

D.     *Plaintiff's PTSD was Known to Schlumberger*

It is beyond dispute that Schlumberger was aware of Plaintiff's condition, PTSD.  Exhibits 2 and 3.  Schlumberger was also aware of the consequential limitations of Plaintiff's PTSD, particularly that Plaintiff was susceptible to "flares" of PTSD, namely panic or anxiety attacks that could prevent Plaintiff from functioning normally.  Exh. 3.  Indeed, Plaintiff made his accommodation request on May 8 because just a few days before he had had a panic/anxiety attack so severe that he had to leave his work at Schlumberger and be transported to a VA hospital.  Exh. 9.  Dr. Roach, in her Clarifying Accommodations Form, confirmed that when Plaintiff did not have his service dog with him, his PTSD could "flare" to the point of severe emotional distress, prevention Plaintiff from functioning normally.  Exh. 3.  It is thus well documented, and admitted by Schlumberger, that Schlumberger knew of Plaintiff's disability and its consequential limitations.  Exh. 1, 102:3-7, 109:13-110:6; Exh. 3; Exh. 14.  Finally, it must be noted that promptly after Plaintiff made his accommodation request, he provided Schlumberger with a medical release so that Schlumberger could obtain any further information on Plaintiff's condition it felt it needed.  Exh. 10.  Schlumberger chose not to seek any further information:

> **Deposition of Jean-Remy Bellanger**
> 10     Q.  Did Schlumberger ever, in the entire period
> 11  between May of 2012 and November of 2012 -- ever seek

---

[6] Note that the fact that these panic attacks or "flares" of emotional distress are intermittent does not indicate that Plaintiff's PTSD is any less of a disability.  See *E.E.O.C. v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 618-19 (5th Cir. 2009).

```
12   out any guidance from any physician regarding PTSD or
13   Juan's request for an accommodation at work?
14       A.  I'm not aware of any request at that time.
15       Q.  Was there any rule against HR at Schlumberger
16   seeking out expertise about PTSD or service dogs?
17       A.  No.  We don't have any rule specifically about
18   PTSD or service dogs.
…
19       Q.  Did Schlumberger reach out to any of Juan's
20   providers with respect to his PTSD during the
21   accommodation process?
22       A.  I'm not aware of any communication effort on
23   our side to reach out to his --
24       Q.  And do you know --
25       A.  -- physicians.
```

Exh. 1, 67:10-18, 88:19-25.

E.   *Plaintiff's Requested Accommodation was Reasonable*

On November 30, 2012, Schlumberger informed Plaintiff that his accommodation request had been granted. Exh. 11. Schlumberger admitted that Plaintiff's service dog was effective in managing his PTSD and committed to "working with you [Plaintiff] further to ensure this accommodation is implemented successfully and that it remains effective for you." *Id.* Schlumberger also scheduled a follow-up call "to review the effectiveness of the accommodation request." *Id.* The effectiveness of the accommodation was apparently confirmed, as Schlumberger confirmed that the decision to grant the accommodation was correct:

**Deposition of Jean-Remy Bellanger**
```
25       Q.  And finally, before we depart at least to go
0101
 1   downtown, does Schlumberger take the position that its
 2   decision in November 2012 to allow the service dog on to
 3   the premises was the correct decision under
 4   Schlumberger's policies?
 5       A.  Can you --
 6           MR. DAVIS:  Objection.  Form.
 7           THE WITNESS:  -- reiterate the question?
 8       Q.  Sure.  Schlumberger in November of 2012 finally
 9   did agree that the dog -- that a service dog would have
```

    10   access to the premises, right?
    11     A.  Yes.
    12     Q.  Was that the right decision under
    13   Schlumberger's own policies?
    14     A.  I believe, yeah.
    15     Q.  Was there ever a determination made that
    16   Schlumberger had made a mistake or should not have
    17   granted the request for accommodation in November 2012?
    18     A.  No.
Exh. 1, 100:25-101:18.

Indeed, Schlumberger agreed that the accommodation was both effective and reasonable in its corporate deposition:

**Deposition of Jean-Remy Bellanger**
    13     Q.  Well, I'm not really asking you about policies.
    14   I'm just saying, is the company aware that service dogs
    15   for patients who have PTSD -- that the dogs are trained
    16   to observe the patient, to keep an eye on them?
    17     A.  Obviously --
    18       MR. DAVIS:  Objection.  Form, outside the
    19   scope of the notice.
    20       THE WITNESS:  Obviously, yes.  Because the
    21   request was granted.
    22     Q.  And does the company understand that the dogs
    23   are trained to be able, when they observe a patient
    24   having a flashback or a panic attack -- is to intervene
    25   with the patient to prevent the patient from suffering a
0110
   1   PTSD flashback or panic attack?
   2       MR. DAVIS:  Objection.  Form, outside the
   3   scope of the notice.
   4       THE WITNESS:  Since the letter was
   5   approved, I believe that those points were taken into
   6   account to push us to grant it.
…
    22     Q.  Sure.  And from your perspective as an HR
    23   person at Schlumberger, Schlumberger is going to approve
    24   the accommodation if there is a good-faith basis to
    25   believe that the accommodation will allow the worker to
0146
   1   be successful?
   2     A.  Sure.
…

```
9      Q.  And when Juan says that Goldie did help him to
10   be a successful worker, free of panic attacks on the
11   job, Schlumberger has no reason to disagree with that,
12   right?
13             MR. DAVIS:  Objection.  Form.
14             THE WITNESS:  We have no reason to
15   disagree.
```

Exh. 1, 109:13-110:6, 145:22-146:2, 146:9-15; see also Exh. 1, 102:8-103:21.

In light of these admissions that the accommodation was reasonable from Schlumberger's official representative, it is both surprising and troubling that Schlumberger's counsel has taken the opposite position from its client in this litigation.[7] (See, e.g. Dkt. 39) The idea that the accommodation was not reasonable is not supported by the law, by the facts, or by Schlumberger itself. When asked, Schlumberger's representative confirmed that neither the company nor any of its management questioned the decision to allow the accommodation or had any objections to it. Exh. 1, 104:18-105:5.

The applicable regulations implementing the ADA define "reasonable accommodations" as:

> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.
>
> 29 C.F.R. § 1630.2(o)(1)

Examples given in the ADA include "making existing facilities used by employees readily accessible and usable by individuals with disabilities," "acquisition or modification of equipment or devices," "appropriate adjustment or modifications of examinations, training materials or policies," and "other similar accommodations." 42 U.S.C. § 12111(9). Further,

---
[7]

"reasonable accommodations are not restricted to modifications that enable performance of essential job functions." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 453 (5th Cir. 2013). Nor must an accommodation be a form of medical treatment or peer reviewed.[8] The only inquiry is whether the accommodation enables the individual employee to perform his work or otherwise enjoy the benefits of employment. 29 C.F.R. § 1630.2(o)(1).

Plaintiff's requested accommodation of bringing his service dog to work easily falls within this definition. Having the service dog present to prevent or ameliorate any PTSD flare-ups enabled Plaintiff to perform the essential functions of his job when his disability would otherwise prevent him from doing so. Exh. 1, 109:13-110:6, 146:9-15. And of course, knowing that his service dog was present to assist him as needed provided Plaintiff the peace of mind to enjoy the day to day benefits and privileges of employment. *Id*. Allowing the service dog at Plaintiff's workplace thus made the facility "readily accessible and usable" by Plaintiff. It represented an "acquisition" of equipment in that Plaintiff provided a kennel, leash, and other materials to facilitate his service dog's presence at work. And of course, modification of policies to permit a service or support dog is taken directly from the statutory language and has been found to be a reasonable accommodation in other cases. See, e.g. *Falin v. Condominium Ass'n of La Mer Estates, Inc.*, Not Reported in F.Supp.2d, 2012 WL 1110024, *3 (S.D.Fla. 2012).

Having granted the accommodation and kept it in place for over a year, and then having confirmed that the accommodation was successful and the right decision, Schlumberger is hardly in a position to claim now that the accommodation was not reasonable. It is thus unsurprising

---

[8] In discovery, counsel for Defendant has claimed that because one of Plaintiff's therapists disagreed with the accommodation of having Plaintiff's service dog at work, that the accommodation was not reasonable. As set forth in the ADA's enabling regulations, there is no requirement that an accommodation be supported by unanimous medical advice or peer-reviewed research. 29 C.F.R. § 1630.2(o)(1). Rather, the inquiry for whether an accommodation is reasonable depends upon the individual situation of the worker. *Id*. Here, the Defendant agrees that the accommodation was reasonable for the Plaintiff. Exh. 1, 100:25-101:18, 102:8-103:21, 109:13-110:6, 144:23-145:7, 146:9-15.

that Schlumberger admits today that allowing Plaintiff to have his service dog was effective and a reasonable accommodation under the ADA:

> **Deposition of Jean-Remy Bellanger**
> 23    Q. Right.  But as the company representative,
> 24   Schlumberger is not saying today that the accommodation
> 25   of the dog was not reasonable?
> 0145
> 1           MR. DAVIS:  Objection.  Form, calls for
> 2   attorney --
> 3      Q.  Is it?
> 4           MR. DAVIS:  -- client privilege and work
> 5   product.
> 6           THE WITNESS:  We do not consider it as not
> 7   reasonable.

> Exh. 1, 144:23-145:7; see also Exh. 1, 100:25-101:18, 102:8-103:21, 109:13-110:6, 146:9-15.

In light of these undisputed facts, summary judgment that the accommodation was reasonable is appropriate as a matter of law.

F.    *Schlumberger Refused to Grant an Accommodation for Six Months*

Since the accommodation originally requested by Plaintiff for his disability was reasonable and did not pose an undue hardship to Schlumberger, Schlumberger had a duty to grant an accommodation to Plaintiff.  29 C.F.R. § 1630.9(a).  Yet as the EEOC found, Schlumberger granted no accommodation to Plaintiff for over six months, until November 30, 2012. Exhibits. 17, 20.  Schlumberger admits that the EEOC cause determination was factually correct in so finding:

> **Deposition of Jean-Remy Bellanger**
> 16    Q. Has anyone at Schlumberger ever told you up to
> 17   today whether or not the EEOC's statements in the cause
> 18   determination are correct or incorrect?
> 19            MR. DAVIS:  Objection.  Outside the scope
> 20   of the topic list.
> 21            THE WITNESS:  I don't understand the
> 22   question.

>     23    Q.  Sure.  Has anybody said at Schlumberger said
>     24  that they disagreed with anything in that cause finding?
>     25    A.  No.

Exh. 1, 39:16-25; see also Exh. 4, no. 7.

On that date, for no reason its representative could articulate, Schlumberger abruptly reversed position and granted Plaintiff's requested accommodation. Exh. 1, 97:15-97:25. Schlumberger admits that the decision to grant Plaintiff's accommodation was the correct decision (Exh. 1, 100:25-101:18) but could give no explanation why Schlumberger delayed for 6 months before granting the accommodation or why Schlumberger eventually granted the accommodation on the same record on which it had previously denied it. Exh. 1, 97:15-99:18, 135:21-136:4.

G.  *The Requested Accommodation Did Not Pose an Undue Hardship*

Schlumberger has pled the affirmative defense of undue hardship in this case. To prevail, Schlumberger would have to show that the requested accommodation caused it "significant difficulty or expense." 42 U.S.C. § 12111(10)(A). Schlumberger has never identified any difficulty or expense associated with allowing Plaintiff's service dog and it now admits that allowing the dog posed it no hardship at all:

> **Deposition of Jean-Remy Bellanger**
>   21     Q.  But certainly, when you got there, you did not
>   22  take the position that allowing the service dog was an
>   23  undue hardship on Schlumberger?
>   24     A.  I never heard that Schlumberger would say that
>   25  it's an undue hardship.
>   …
>   4      Q.  Was -- I may have asked you this, and if I
>   5  did, I apologize.  Was having Goldie at the Schlumberger
>   6  location a hardship in any way for Schlumberger, having
>   7  the dog there?
>   8      A.  No.

Exh. 1, 124:21-25, 146:4-8.

As Defendant's corporate representative has expressly disavowed this defense, summary judgment is warranted.

H.      *Schlumberger Violated the ADA by Failing to Accommodate Plaintiff*

As discussed in the foregoing, Defendant has admitted to each of the elements of Plaintiff's failure-to-accommodate claim. In this Circuit, those elements are: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Defendant admits each of these elements. Defendant admits that Plaintiff is a qualified individual with a disability. Part IV.B and IV.C, *supra*. Defendant admits that it knew of Plaintiff's disability and its consequential limitations no later than the June 2012. Part IV.D, *supra*; see also the EEOC Cause Determination (Exh. 17), which Defendant does not dispute (Exh. 1, 39:16-25). Defendant admits that having dog at work was reasonable accommodation for Plaintiff's limitations. Part IV.E, *supra*. Finally, Defendant admits that it failed to grant an accommodation until November 30, 2012, at which point Schlumberger abruptly reversed course and granted the requested accommodation based on the same information that had been provided to it six months earlier. Part IV.F, *supra*. Thus, Defendant has admitted to each of the elements of Plaintiff's failure-to-accommodate claim. As Defendant has also disavowed its defense of undue hardship (Part IV.G, *supra*), Defendant has admitted to every element necessary to establish a violation of its duty to provide reasonable accommodations under the ADA and disclaimed its only affirmative defense to liability. Summary judgment on Defendant's liability for failing to accommodate Plaintiff is thus appropriate as a matter of law.

V.  Conclusion

The record, having established that Plaintiff is a qualified individual with a disability, that a reasonable accommodation, though properly sought, was denied, and that Defendant has admitted these elements under oath, partial summary judgment on the breach of the duty to accommodate is warranted.  Plaintiff requests that the Court grant summary judgment as to Defendant's liability for its breach of the ADA,  and that the issue of damages for this breach be submitted to the trier of fact.

          Respectfully submitted,

          Juan Alonzo-Miranda,
          By his attorneys,

          <u>/s/John W. Griffin, Jr.</u>
          John W. Griffin, Jr.
          Texas Bar No. 08460300
          203 North Liberty Street
          Victoria, Texas  77901
          (361) 573-5500 – Telephone
          (361) 573-5040 – Telecopier
          jwg@lawmgk.com

          Oscar H. Villarreal
          LUTTREL ZUCKER LAW GROUP
          Texas Bar No. 20583900
          400 N. Loop 1604 E.
          Afton Oaks, Ste. 208
          San Antonio, Texas 78232
          (210) 426-3600 – Telephone
          (210) 426-3610 – Fax

          Counsel for the Plaintiff

**Certificate of Service**

      I certify that a true and correct copy of this document has been served upon the defendant via the electronic filing system of the United States District Court for the Western District of Texas on August 25, 2014.

**William L. Davis**
davisw@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201


/s/ John W. Griffin, Jr.
John W. Griffin, Jr.